## BRADLEY ET AL. V. CAMP.

A partnership in trade being formed, the partners are, by law, liable to be jointly charged for all credits given at the request of either partner, relating to the copartnership business; until public notice is given of a dissolution; and on a joint contract, if one only be sued, it is matter of abatement, but no advantage can be taken of it, under the general issue.

ERROR from the Court of Common Pleas, on a bill of exceptions. The plaintiffs being trustees to the insolvent estate of Reynold Marvin, Esq., brought their action of book debt against the defendant, Joel Camp. The general issue was pleaded and joined to the court; and a judgment rendered for the defendant. The case, as it appeared on trial, was then stated in a bill of exceptions, and certified by the judge.* Some time in the year 1759, the defendant entered into a copartnership trade with Silas Bingham, which extended only to the purchasing goods from a certain Mrs. Webb, at Weathersfield, as occasion should require, to supply a store in Salisbury, in the county of Litchfield, for the purposes of retailing. This partnership was dissolved in May, 1762, by mutual agreement. The dissolution was published, by a declaration in the hearing of several persons who were called as witnesses; and never published in any other manner, but was, however, generally known in the town of

---

*Note.— The propriety of introducing bills of exceptions in this manner, has been questioned by some. There are, however, in the English books, many precedents for this practice. See Douglass' Reports, 363, Blaquier v. Hawkins; 1 Blackstone's Reports, 555, Money v. Leach; Cowper, 161, Mostyn v. Fabrigas. And there may, perhaps, be much more reason for adopting such a practice here, where many questions of law are submitted to the jury; and if a special verdict be not found, no other relief can be had against an erroneous judgment; but, in this case the mode of bringing it up, was not contended, and no opinion of court taken upon the subject. Since the trial of this cause, the mode of bringing up a cause by bill of exceptions, under like circumstances, has been adjudged illegal. See the case, McDonald v. Fisher and Baldwin, reported at large.

Salisbury.   By the dissolution, all debts due the company became the property of Bingham, who became obligated to pay all debts due from the company; and for that purpose gave to Camp a promissory note for £2,800 conditioned to indemnify against all demands upon the partnership.  Camp, at the same time, received about £200 for his dividend of the profits which had accrued upon their joint trade.

The account of said Marvin, exhibited on trial, stood charged to Camp and Bingham, in company.   It contained only charges for cash advanced, and services rendered, as attorney, in prosecuting sundry suits at law, commenced in the name of Camp and Bingham, for the collection of debts which accrued to them in the course of their partnership trade.   This business was undertaken upon the application of Bingham, in the month of August, 1762, subsequent to the dissolution of the partnership, he being the acting partner.   Marvin, living in Litchfield, did not know of the partnership of Camp and Bingham, until he was requested to undertake this business; he was then told it was a company affair — which also appeared from the face of the accounts and notes to be put in suit; and he was not then notified, nor did he at any time know of the dissolution.   At the same time this business was undertaken, he did business for Bingham, as an individual.

Camp had no knowledge that these suits were commenced, nor did he know that said Marvin had any demands on him or Bingham, for business done in their names, till a short time before the present action was instituted by the plaintiffs:   Bingham having the sole direction of the business done by Marvin, and he also received the avails thereof to his own use.

Subsequent to these transactions, and before the commencement of the present suit, Bingham died, a bankrupt.

Bradley et al. v. Camp.

On this case four questions of law were referred to the Court of Common Pleas:

1. Whether the dissolution of the partnership was published in such manner as to exonerate Camp from the subsequent contracts of his partner, on the company's credit.

2. Whether a dissolution of the partnership, which respected only the future purchase and sale of goods, though it had been published with all the usual forms, could affect a contract like this, which arose out of it, as a necessary consequence.

3. Whether, if two or more join in suit, it does not constitute such a partnership, or connection, by holding out a joint credit, as to render them all liable for the expense of prosecuting, however their several interests may be in the event.

4. Whether, this action being brought against Camp alone, without any reference to Bingham, in the declaration, under all the circumstances, can be supported on the present issue.

These were the only points made in the cause.    Judgment being rendered for the defendant, the errors assigned were, that the court had mistaken the law on each of the points in question.

On the plea, *in nullo est erratum*, it was now argued in this court.

Mr. Reeve and Mr. Kirby, for the plaintiffs in error.

It is an established principle, that in mercantile companies, the contract of one partner, respecting the partnership, is binding on the whole, until notice of a dissolution be given.    Layfield's case, 1 Salkeld, 292; 2 Blackstone's Reports, 993, Grace v. Smith.    What is proper notice, and whether it has been given in this case, is a question.    The ordinary way of announcing such transactions is by adver-

tisement in a public gazette.    As each individual of the company acquires a joint credit with his copartners when that connection is formed, nothing can be more reasonable, than, that the dissolution of that connection should be made known wherever the company's dealings extend, before either can claim an exemption, from the contracts of the other.    In the case of Fox v. Hanbury, Cowper, 449, it is adjudged by the Court of King's Bench, that, " if partners dissolve their partnership, they who deal with either, without notice of such dissolution, have a right against both." That is applying the rule more strictly than is necessary in the present case; for here was not the reasonable and usual means of knowledge given.

ELLSWORTH, J., mentioned the case of Imlay, at Hartford, in which this point had been adjudged.    " The case was, that an action was brought against William Imlay, on a contract made by a partner of a company (to which Imlay had belonged), after the dissolution.    It appeared that the dissolution had not been properly published, and Imlay was holden to discharge the debt."

The case of Bloxham and Fourdrinier against Pell and Brooke, before Lord Mansfield, compares very exactly with the present case.    Cited in 2 Blackstone's Reports, 999. " There was a partnership for seven years between Brooke and Pell; but at the end of one year agreed to be dissolved, but no express dissolution was had.    The agreement recited, that Brooke being desirous to have the profits of the trade to himself, and Pell being desirous to relinquish his right to the trade and profits, it was agreed, that Brooke should give Pell a bond for £2,485 which Pell had brought into trade, with interest at five per cent. which was accordingly done.    And it was further agreed, that Brooke should pay to Pell £200 per annum, for six years, if Brooke so long

lived, as in lieu of the profits of the trade; and Brooke covenants, that Pell should have free liberty to inspect his books. Brooke became a bankrupt before anything was paid to Pell.    And this action being brought for a debt incurred by Brooke, in the course of trade, Lord Mansfield held that Pell was a secret partner."

In the case now under consideration, there was not a more express dissolution of the partnership than in the one last mentioned; for here it was all verbal; the terms being agreed upon, two or three witnesses only, were called to hear the declaration of the parties concerned.    There it was committed to writing, and executed on one side and on the other; and though not published, it was as effectual.    That was a much harder case than the present; for Pell not only lost all his stock in trade, and the profits covenanted to be paid him upon the dissolution, but was subject to pay the subsequent debts of his partner.    In the present case, Camp has saved his stock in trade, and £200 profit.

As to the second point, the charges in this case are of such a kind, that if the dissolution had been published with the usual formality, it could not affect the present demand: For, unless there had been an express stipulation that this business should be performed upon the sole credit of Bingham, or Marvin had been informed of the terms of the dissolution, and that the company dues were assigned to Bingham, and had become his sole property, it must have been presumed a company concern, and for the benefit of all the partners, notwithstanding the dissolution.    The dissolution of a partnership puts an end to any future acquest of property from the joint occupancy of the company's funds, but it leaves the partners the same joint interest in whatever they may have on hand, whether it be in stock, debts due, or in any other form:    And they still continue to be partners,

and as jointly liable as before, in every contract necessary to be made for the purpose of ascertaining, collecting and dividing their property. And whatever compact there may be among the individuals, to control this general authority, which each one still retains of using the other's credit on those occasions; still, if that be not published, as well as the dissolution, it can avail nothing, as it relates to strangers.

The contract on which the present action is founded, is clearly of this kind; therefore, the right of recovery is not affected by a publication of the dissolution.

As to the third point. The demand in the present case originated from the prosecution of suits at law in the name of Camp and Bingham, for the recovery of debts contracted with them. Here was a joint interest held up to view; and Camp, by permitting Bingham thus to use his name, has empowered him to use his credit. If Bingham has abused the trust reposed in him, it is much more reasonable that Camp should sustain the loss, than a stranger. 1 Salkeld, 289, Hern v. Nichols; Holt, 462, S. C.; Durnf. 12, Fitzherbert v. Mather. Agreeable to this is the case of Carvick v. Vickery, Doug. Rep. append. 31.

" This was an action by the indorsee of a bill of exchange, which was in the following form:

" Mr. Abraham Vickery,

" Two months after date, please to pay to us or our order, the sum of, etc.

;                    " JOHN MARYDWELL,

                     " JOHN MARYDWELL, Jr.

" It was indorsed thus — John Marydwell, Jr.

" The Marydwells were father and son. The indorsement was by the son. They were admitted not to be partners. The bill when due, was presented to the defendant,

and accepted; and at the same time he wrote upon it a direction to his banker to pay it.    The plaintiff was non-suited, because there was not an indorsement by both the parties to whose order the bill was made payable.    A new trial was moved, on the ground, that the Marydwells by joining in the same bill, and holding themselves out to the world as partners, should, therefore, for that purpose, be treated and dealt with as such; and consequently the indorsement of one was binding on the other.

" After argument, Lord Mansfield delivered the unanimous opinion of the court, that the Marydwells, by making the bill payable ' to our order,'  had made themselves partners as to this transaction."

In the present case there was as much appearance of a joint interest, as in the last mentioned, and more injustice might be done by not treating it as such.

The fourth point — whether, under the general issue, the defendant may take exception, that his partner is not described in the declaration as having jointly contracted the debt with him.    This point is fully settled in the books.

Contracts of this kind have ever been held to be joint and several.  Being several, either of the debtors may be proceeded against at the option of the creditor.    And it cannot be essential to the action, that the debt be described as contracted in company with another person.    If it be necessary thus to declare, it is merely for the advantage of the defendant, that he may be better notified of the nature of the demand; therefore, being only matter of form, the exception can never be taken but in abatement.    If the defendant neglects to take his exception at the beginning of the suit, he is supposed to have waived it.    These  principles  are

fully established, in the case of Rice v. Shute, 2 Blackstone, 697; 5 Burrow, 2611, S. C.; also, Abot v. Smith, ibidem, 947; Sayer v. Chaytor, Lutwyche, 216; and Gilbert v. Bath, 1 Str. 503.

The case of Whitcomb v. Whiting, Douglass, 629, furnishes a precedent for this mode of declaring: " The declaration was in common form, on a promissory note executed by the defendant.    The general issue was pleaded; and also *non assumpsit infra sex annos;* replication, *assumpsit infra sex annos.*    On trial, the plaintiff produced a joint and several note, executed by the defendant and three others."    This action proceeded, and no question was made as to the propriety of the process.

Mr. Canfield and Mr. Strong, for the defendant.    In this case there appears to have been a copartnership between the defendant and Bingham.    It, however, extended only to a single store of goods, and the authority that each had to contract for the other, was restrained to a single person. Under such circumstances, nothing more was necessary to destroy that authority, than to make the dissolution of the company as extensively known, as the existence of it.    That was done in this case:    It does not appear that the partnership had ever been heard of out of the town of Salisbury, except by Mrs. Webb, at Wethersfield, with whom they traded; and it is clear, that the creditor in this case had no knowledge of it till the time of the contract.    Why, then, ought he to complain that he had not notice of the dissolution, when he did not know of the company?    It is an idea not founded in reason, that the dissolution of every company of merchants must be made known beyond the limits of their usual dealing.    Notice would never be necessary, but upon this ground, that the company, by reputation, having gained

a credit, some act of equal notoriety, must take place to put an end to it.   If this line be once passed, the partners can never be secure against each other; for some one may always go where the company hath not been known, and contract upon the credit of it.

It appears in this case, that at the same time this debt was contracted, Marvin was transacting the same kind of business for Bingham, on his own credit.   It cannot, therefore, be supposed, that the credit of a company which he had never before heard of, was the inducement to undertake the prosecution of those suits.   This idea is corroborated by the length of time which hath elapsed since the debt was contracted.   Had Marvin originally considered Camp to be his debtor, he would undoubtedly have demanded payment long before this time:   And had the demand been within the life of Bingham, Camp might have indemnified himself. Camp, having no knowledge of the contract, nor any notice of the debt, it is unreasonable, at this distance of time, that he should be holden.   The action of book debt is founded on equitable principles; and although *stricti juris*, there might be a right of recovery; yet the court will duly weigh every circumstance, that has equitably intervened in favor of the defendant.

As to the last question, it does not rest simply on this, whether there be a defect in point of form; but the plaintiffs have declared, as upon a contract with Camp only; the issue is, that the defendant is not indebted in the manner and form of the declaration.   The evidence exhibited on the trial is a contract with Camp and Bingham.   This does not support the issue.   It is a debt of a different description; and a recovery in the present case cannot be pleaded in bar of another action upon the latter contract; for the record

Bradley et al. v. Camp.

will not show it to be the same.    The case of Leglise v.
Champante, 2 Strange, 820, is in point.    "There it appeared
on evidence, that the plaintiff had a partner, who was not
party to the action:    And the Chief Justice (Lord Ray-
mond) held, that if it was an assumpsit, it might be taken
advantage of at the trial, for it would not be the same con-
tract, but it ought to be pleaded in abatement in the case
of a tort."

The chief judge, mentioned a case which had been de-
termined upon the authority of the case now read from
Strange; but said the later authorities were the other way.

Judgment of the Court of Common Pleas reversed.

By the whole COURT.    A copartnership in trade being
formed, the partners become liable to be jointly charged
for all services done, or credits given at the request of either
of them, relating to the business of the copartnership; and
so continue liable till public notice is given of the copart-
nership's being dissolved.    This is necessary for the benefit
of trade, and to prevent imposition; and so far as the right
each partner derives from the formation of the partnership,
to contract for the company, relates to creditors, that right
is not vacated, until public notice of a dissolution is given.
Cowper, 449, Fox v. Hanbury.    In the present case, this
notice was not given, nor had the creditor any knowledge of
the fact.    He might well, therefore, charge the partners in
company; more especially, as the services he rendered were
*prima facie* for their joint benefit, being the prosecution of
suits in their joint names, and which arose out of the com-
pany transactions.

There can be no doubt but a right of action survived
against the surviving partner; especially if it be considered,

that all company contracts are in their nature joint and several:    And as to the manner of bringing this suit, it might have been well for the purposes of certainty, and benefit of the defendant, in preparing his defense, to have declared, that the debt was contracted by the defendant in company with Bingham:    But a failure thus to declare, was only pleadable in abatement, and could be of no avail under the general issue, on which the cause was tried.    2 Blackstone's Reports, 697, Rice v. Shute; 5 Burrow, 2611, S. C.; 2 Blackstone, 947, Abot v. Smith.    For it doth not falsify a charge of debt against one, to show that another is also indebted, and might have been joined in the suit:    Nor doth the law require the same circumstantiality and precision in declaring upon specialities, or other writings of which there is a profert, as on a special assumpsit, where the defendant has no means of identifying the contract but from the declaration; and a small variation between the allegations and the proofs may be fatal.

Therefore, the judgment of the Court of Common Pleas was reversed.